UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVE M. GOODMAN,<br><br>                Plaintiff,<br><br>    v.<br><br>TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., et al.,<br><br>                Defendants. | Case No. 2:12-cv-01083-MMD-GWF<br><br>ORDER<br><br>(Defs.' Motion to Dismiss – dkt. no. 12;<br>Tr.'s Motion to Substitute Party<br>– dkt. no. 36) |

**I.    SUMMARY**

Before the Court are Defendants' Motion to Dismiss (dkt. no. 12) and Yvette Weinstein's Motion to Substitute Party and Request for Hearing (dkt. no. 36). For the reasons discussed below, Defendants' Motion is denied, and Weinstein's Motion is granted.

**II.    BACKGROUND**

On April 20, 2012, Plaintiff Steve Goodman brought this suit alleging that he suffered injuries after using various drugs licensed, manufactured, and sold by Defendants. (*See* dkt. no. 1-1.) He alleges that between April 2008 and September 2010, his use of Defendants' drugs, members of a class of drugs called proton pump inhibitors ("PPIs") that treat various stomach-related acidity illnesses, caused him to suffer from hypomagnesaemia, or low blood magnesium. He brought this suit in state court alleging that the drugs were, *inter alia*, defectively designed, without adequate

warning, breached an implied warranty of fitness, and were manufactured and sold negligently. The suit was removed to this Court on June 25, 2012. (Dkt. no. 1.)

A few days after removing the suit, Defendants filed the instant Motion to Dismiss, arguing that Goodman's February 4, 2012, Chapter 7 bankruptcy filing estops him from pursuing this litigation. (*See* dkt. no. 36.) The bankruptcy court discharged Goodman's debts on May 8, 2012 (*see* dkt. no. 13-B), and the bankruptcy case was closed on May 11, 2012 (*see* dkt. no. 13-C).

During the pendency of the bankruptcy petition, Goodman brought this suit. His counsel was apparently unaware of the petition when bringing this case, and learned of the bankruptcy petition on June 29, 2012, the same day the Motion to Dismiss was filed. On July 3, 2012, Goodman's counsel contacted the bankruptcy trustee and Goodman's bankruptcy counsel in order to reopen the case, amend the bankruptcy schedules, and prosecute the claims on behalf of the correct parties. The bankruptcy court subsequently granted Goodman's request to reopen the case on July 5, 2012, and Goodman filed amendments to his bankruptcy schedules and related documents disclosing his claim against Defendants. (*See* dkt. no. 22.)

Thereafter, on August 9, 2012, Yvette Weinstein, Chapter 7 Panel Trustee (hereinafter "Trustee") of Goodman's bankruptcy estate, filed a Motion to Substitute as the real party in interest in this case. (*See* dkt. no. 36.) Defendants oppose the Motion as procedurally improper, and as potentially moot should the Court grant their Motion to Dismiss. (*See* dkt. no. 39.)

**III.   LEGAL STANDARD**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.*

1  *Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
2  "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550
3  U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient
4  factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at
5  678 (internal citation omitted).

6  In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to
7  apply when considering motions to dismiss.  First, a district court must accept as true all
8  well-pled factual allegations in the complaint; however, legal conclusions are not entitled
9  to the assumption of truth.  *Id.* at 679.  Mere recitals of the elements of a cause of action,
10 supported only by conclusory statements, do not suffice.  *Id.* at 678.  Second, a district
11 court must consider whether the factual allegations in the complaint allege a plausible
12 claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint
13 alleges facts that allow a court to draw a reasonable inference that the defendant is
14 liable for the alleged misconduct.  *Id.* at 678.  Where the complaint does not permit the
15 court to infer more than the mere possibility of misconduct, the complaint has "alleged–
16 but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks
17 omitted).  When the claims in a complaint have not crossed the line from conceivable to
18 plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

19 A complaint must contain either direct or inferential allegations concerning "all the
20 material elements necessary to sustain recovery under *some* viable legal theory."
21 *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,
22 1106 (7th Cir. 1989) (emphasis in original)).

23 **IV.    DISCUSSION**
24     **A.    Judicial Estoppel**
25 The equitable rule of judicial estoppel "generally prevents a party from prevailing
26 in one phase of a case on an argument and then relying on a contradictory argument to
27 prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000).  The
28 purpose of the rule is "to protect the integrity of the judicial process by prohibiting parties

from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotations omitted).  Judicial estoppel "is an equitable doctrine invoked by a court at its discretion," and "most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal citations omitted).

"[T]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750 (*quoting Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982)). However, in deciding whether to apply the doctrine, courts examine three factors: (1) whether the party's later position was clearly inconsistent with its earlier position, (2) whether the party was successful in persuading a court to accept its earlier position such that acceptance of the later position would create the perception that either the first or the second court was misled, and (3) whether the party would derive an unfair advantage if not estopped. *Id.* at 750-51. In addition, "judicial estoppel seeks to prevent the *deliberate* manipulation of the courts, and therefore should not apply when a party's prior position was based on inadvertence or mistake." *U.S. v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (internal quotations omitted).

The application of judicial estoppel in the bankruptcy context does not require that a debtor intentionally omit potential claims from his disclosures. *See, e.g., Barger v. City of Cartersville, Georgia,* 348 F.3d 1289, 1296 (11th Cir. 2003); *see also In re Coastal Plains,* 179 F.3d 197, 212 (5th Cir. 1999) (applying judicial estoppel despite the fact that the debtor relied on his attorneys to accurately complete the bankruptcy application and did not intentionally fail to list all claims). However, courts have held that intent is a factor in determining whether judicial estoppel applies. *See, e.g., Schneider v. UNUM Life Ins. Co. of Am.,* No. 05-1402, 2008 WL 109065, at *5 (D.Or. Jan. 8, 2008) ("[O]ne can infer from *Hamilton* that intent was a factor in that decision because the debtor was

///

1    unscrupulous and the court made repeated reference to his bad behavior in the
2    opinion").

3        **B.**    **Analysis**

4    Defendants argue that Goodman's failure to disclose his claims against them in
5    his earlier-filed bankruptcy petition warrants dismissal of the litigation since the present
6    suit was filed while the bankruptcy was still open.  In his Response, Goodman argues
7    that his failure to disclose was inadvertent, and that as a result application of the judicial
8    estoppel doctrine to bar his claims would be unjust.  (*See* dkt. no. 21.)

9    As its power to apply judicial estoppel is rooted in equity, "[t]he Court, viewing the
10   facts in a light most favorable to Plaintiff[], must balance all the equities and consider the
11   available determinations through the lens of the various policies behind bankruptcy and
12   judicial estoppel."  *Cannata v. Wyndham Worldwide Corp.*, 798 F. Supp. 2d 1165, 1174
13   (D. Nev. 2011).  In this case, Goodman corrected the alleged inadvertent failure to
14   disclose his claims only after "being exposed by an adversary." *Evans v. Allied Air*
15   *Enterprises, Inc.*, CA 5:10-2029-MBS, 2011 WL 4548307, at *4 (D.S.C. Sept. 30, 2011).
16   However, this fact alone ought not to prevent the bankruptcy trustee as the real party in
17   interest from pursuing this claim for the benefit of Goodman's creditors.  *See Bisek v.*
18   *Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (distinguishing between post-petition
19   claims brought by a debtor and those brought by the bankruptcy trustee).

20   As recognized by this Court in *Cannata*, the Ninth Circuit expressly declined to
21   apply judicial estoppel where the bankruptcy trustee was given the opportunity to
22   administer the undisclosed claims.  *See Dunmore v. United States,* 358 F.3d 1107, 1113
23   n.3 (9th Cir. 2004).  "This approach was a permissible alternative to judicial estoppel that
24   prevented [Plaintiff] from deriving an unfair advantage if not estopped."  *Id.*  Both parties
25   to this litigation should not receive a windfall: Goodman should not benefit from failing to
26   disclose his claim, but nor should Defendants who have no stake in Goodman's
27   bankruptcy and were not prejudiced by his failure to disclose.  The Court chooses to
28   follow its approach in *Cannata* ─ an approach suggested by the Defendants themselves

in their Response to the Trustee's Motion to Substitute — and declines to estop Goodman from pursuing his claims against Defendants. *See* Cannata, 798 F. Supp. 2d at 1175-76. However, all potential awards of damages are limited to the amount necessary for the repayment of Goodman's creditors as determined by the Trustee, and nothing more.

As a corollary to this ruling, the Court grants the Trustee's Motion to Substitute. "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The bankruptcy trustee is the real party in interest of suits that are property of the bankruptcy estate. *See* 11 U.S.C. § 541(a); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 708 (9th Cir. 1986). The Court thus finds good cause to grant the Motion to Substitute.

Defendants argue that the substitution is procedurally improper because Goodman has not sought voluntary dismissal under Fed. R. Civ. P. 41. But such a voluntary dismissal is not required; from the outset of this litigation, these claims have been properties of the bankruptcy estate, and the real party in interest *has always been* the Trustee. *See Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (noting that when a litigant declares bankruptcy, "all the legal or equitable interests he had in his property became the property of the bankruptcy estate and are represented by the bankruptcy trustee."); *Flowers v. Wells Fargo Bank, N.A.*, C 11-1315 PJH, 2011 WL 2748650, at *3 (N.D. Cal. July 13, 2011) ("The property of the estate is as of the petition date, even though the action was not listed in the schedules and the property that was not abandoned nor administered, and remains the property of the estate even after the bankruptcy case is closed."). For this reason, Rule 41's requirement of a stipulation to voluntarily dismiss the suit does not apply. Indeed, failing to allow the Trustee to administer this action runs contrary to the well-established principal that a debtor lacks standing to pursue claims belonging to the bankruptcy estate. *See, e.g.*, *Just Film, Inc. v. Merch. Services, Inc.*, 873 F. Supp. 2d 1171, 1176 (N.D. Cal. 2012). Defendants ///

suffer no prejudice from allowing this substitution, since a trustee is substituted as if she brought the suit herself.

**V.     CONCLUSION**

After considering the factors governing application of judicial estoppel as set out in the Supreme Court's *New Hampshire* decision, the Court declines to dismiss this suit notwithstanding Goodman's failure to disclose his claims against Defendants in his bankruptcy petition. Since he apparently moved to re-open his bankruptcy case only after Defendants raised the estoppel issue, allowing Goodman to benefit from his nondisclosure does a disservice to the bankruptcy process. Nevertheless, the presence of the Trustee and her willingness to administer Goodman's claims precludes application of judicial estoppel.

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (dkt. no. 12) is DENIED, but any award to Plaintiff Steve Goodman is to be capped at the amount necessary to repay his creditors as determined by the Trustee.

IT IS FURTHER ORDERED that the Trustee's Motion to Substitute (dkt. no. 36) is GRANTED.

DATED THIS 26th day of March 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE